APPEAL OF F. C. HENDERSON CO. AND NATIONAL TALKING MACHINE SALES CORPORATION.

Docket No. 5272.    Decided November 20, 1926.

Book inventory at the close of the year was properly reduced to accord with the physical inventory. Where the book inventory reflects an increase in value offset by a "reserve for appreciation," the action of the Commissioner in adding the amount of the reserve for appreciation to the net income returned by the petitioner is, in the absence of evidence showing material facts, approved.

*David Greer, Esq.*, for the petitioners.
*F. O. Graves, Esq.*, for the Commissioner.

This is an appeal from the determination of a deficiency in income and profits taxes for the calendar year 1920 in the amount of $11,-879.17. Only a part of this deficiency is in controversy. The question presented is whether an appreciation in the value of an inventory offset by a "reserve for appreciation" constitutes taxable income of the year 1920.

### FINDINGS OF FACT.

The F. C. Henderson Co. and the National Talking Machine Sales Corporation were affiliated for the year 1920. These corporations are engaged in the sale of sewing machines, pianos, talking machines, talking machine records and accessories for talking machines. The F. C. Henderson Co. operates thirty odd departments in stores owned and generally operated by others under leasing agreements in different parts of the United States. When merchandise is delivered to these stores, the stores are charged upon the books of the corporation with such merchandise at the selling price. In the case of sewing machines, pianos, and talking machines, an accurate record by number of each article is maintained in the principal office in Boston. In the case of talking machine records such procedure is physically impossible. Each month the person in charge of each

department in the several stores located throughout the United States reports to the head office in Boston the merchandise which is on hand in that store. This report is not priced. At the close of the year these inventory sheets are priced and become the closing and opening inventories upon the books of the petitioners. The inventories of sewing machines, pianos, and talking machines are priced at the actual cost as ascertained from the detailed record kept by the F. C. Henderson Co. at its principal office in Boston. Inasmuch as the selling price of records during the year 1920 was as a matter of custom and fact determined by the manufacturers of such records, and inasmuch as records were sold by the manufacturer to the petitioners on the basis of 40 per cent off the advertised retail price, the records were priced for the purpose of the inventory by taking 40 per cent off the advertised retail price. This practice has been consistently followed by the F. C. Henderson Co. and its subsidiary, the National Talking Machine Sales Corporation,.from and including the year 1913 down to the present time.

During the calendar year 1920 the advertised retail price of certain records was advanced by the manufacturers. The petitioners thereupon set up on their books an account called " reserve for appreciation," crediting this account with an amount which would represent the increase in the cost price of such records as they had on hand. A corresponding debit was made to merchandise. Later in the year 1920 certain reductions were made in the price of records which had thus been increased in price and the petitioners reduced their reserve for appreciation correspondingly, an offset credit being made to merchandise. At the close of the year 1920 the amounts standing to the credit of the " reserve for appreciation " in the case of the F. C. Henderson Co. was $7,429.73, and in the case of the National Talking Machine Sales Corporation $9,584.38. The net income shown upon the consolidated return filed for the year 1920 was exclusive of these reserves. The Commissioner has increased the net income by the sum of these two reserves or $17,014.11.

The inventory at December 31, 1920, of both corporations is shown by the petitioners' books of account to have been $420,004.30, and this is the amount of the inventory used by the petitioners in computing the consolidated net income for the year 1920.

OPINION.

SMITH: In their petition to this Board, the petitioners allege a number of errors on the part of the Commissioner in computing the deficiency in income tax for the year 1920. Most of these allegations of error were withdrawn at the hearing. The allegations of error not withdrawn are that the Commissioner erred in increasing

the inventory at December 31, 1920, by $9,925.60, and also in adding to the net income reserves for appreciation in the value of merchandise in an aggregate amount of $17,014.11.

The Commissioner increased the petitioners' inventory, at the close of the year 1920, by the amount of $9,925.60, the increase being predicated upon the ground contained in the revenue agent's report that "it was found that this amount was deducted from cost of records * * * and we have therefore adjusted the inventory to actual cost." Denial of this ground has been entered by the petitioners and proven by competent witnesses. The evidence is that the perpetual inventory carried on the books proved to be $9,925.60 in excess of the physical inventory, taken at the close of the year and upon the basis usually employed by the petitioners, and that the book inventory was adjusted to conform to the actual physical inventory. Further, it is apparent from the facts in this case that any revision of the petitioners' inventory upward would not reflect an inventory valued on the basis of cost, which was the purpose of the revenue agent's adjustment. The evidence shows conclusively that the inventory used by the petitioners in computing the consolidated net income, to wit, $420,004.30, represented the cost of all merchandise other than records, and in the case of the latter, cost plus 60 per cent of the net increase in the retail selling price of records where said retail selling price was advanced by the manufacturers in respect of records on hand. To accomplish the purpose of the revenue agent and restate the inventory at actual cost, a revision downward of the petitioners' valuation would be necessary. The Commissioner's action in increasing the petitioners' inventory at the close of the year 1920 by the amount of $9,925.60, which results in an increase of the same amount in the net income, as reported by the petitioners in the consolidated return, is in error.

The Commissioner increased the consolidated net income, as returned by the petitioners for the year 1920, by the amount of $17,-014.11, being the total of amounts carried on the petitioners' books in reserves for appreciation and, as shown by the revenue agent's report, is composed of the following:

| | |
|---|---|
| Discounts received in 1920 credited to the reserve for appreciation instead of to profit and loss | $4,904.41 |
| Amounts set up to take care of the increase in market value of Columbia records on hand and corresponding charge made to merchandise | 12,109.40 |
| Total | 17,014.11 |

From the evidence of record we must approve the action of the Commissioner in adding to the net income the $4,904.41, above referred to, which represents discounts received in 1920. We see no

reason why that amount should not have been credited to profit and loss instead of to the reserve. The action of the Commissioner in making this addition to net income is approved.

During the year 1920 the petitioners carried a considerable stock of talking machine records. The retail selling price of these records was fixed by the manufacturers thereof. The cost of the records to the petitioners was the retail selling price, at the time of acquisition, less a discount of 40 per cent. The actual cost of these records was charged to the merchandise account. From time to time, during the year 1920, the manufacturers made changes in the retail selling price of records contained in the petitioners' stocks. If the retail selling price was increased, the petitioners adjusted the merchandise account to reflect the new costs of records on hand, in respect of which the advance in selling price was made, by charging to merchandise account and crediting to the reserve for appreciation an amount sufficient to increase the book value of the records to reflect their replacement costs. If the retail selling price was decreased, the merchandise account was credited and the reserve for appreciation charged with an amount sufficient to reduce the book value of the records, in respect of which the decrease in selling price was made, to reflect their replacement costs. In other words, the book value of records on hand was always equivalent to the replacement cost thereof. The result of all the adjustments made during the year was a net increase in book value of records, over actual cost, of $12,109.70, and this is the amount carried in the reserve for appreciation to take care of the write-up in the book value of records. Since purchases were included by the petitioners in the cost of goods sold, for the purpose of computing net income, at the higher book value, instead of being included at actual cost figures, the Commissioner has added to the net income the whole amount in the reserve for appreciation in order to offset the overstatement in the cost of goods sold and its resulting understatement of net income. However, the closing inventory, which the petitioners used in computing the cost of goods sold, included all records on hand at the close of the year, at the retail selling price less 40 per cent, or their then replacement cost.

Obviously, one of three situations existed at the close of the taxable year in question. Either all of the records, in respect of which there had been a change in the selling price during the year and an adjustment made on petitioners' books of account that they might reflect the replacement cost of these records rather than the actual cost, were on hand and included in the inventory at their replacement cost; or all of them had been sold during the year and none remained on hand at the close of the year; or some of them were sold during the year while others remained on hand to be included

in the inventory at their replacement cost. The correctness of the Commissioner's determination depends upon which of these three situations actually existed. If the first mentioned situation is the correct one, then the Commissioner is entirely in error in increasing the net income by the amount of $12,109.70, representing the reserve for appreciation of merchandise, since any overstatement of the cost of goods sold which might otherwise result from computing such cost on the basis of the replacement cost, rather than actual cost, of purchases, has been entirely offset by the petitioners' compensating error in taking the inventory into the cost computation at a valuation which is $12,109.70 in excess of actual cost. On the other hand, if the second mentioned situation existed, and none of the records remained on hand at the close of the year, it is clear that the overstatement of the cost of goods sold, occasioned by taking purchases into the cost computation at an amount in excess of cost, could not be compensated for except by increasing the net income by the amount of the reserve for appreciation of merchandise, which is precisely what the Commissioner has done. If only a part of these records were sold during the year and a part remained on hand at the close and were included in the inventory at their replacement cost, then the overstatement in the cost of goods sold has been partially compensated for, that is, to the extent that the inventory value of records on hand at the close of the year exceeds their actual cost; and to make a full compensation for the overstatement the net income must be increased by such an amount as represents the portion of the reserve for appreciation of merchandise attributable to the overstatement on the books of the cost of records sold during the year.

Which of the three possible situations above referred to actually existed at the close of the taxable year in question, we have not been advised. We can only infer, from statements made in the petitioners' brief which was filed after the hearing, that it is the last mentioned situation with which we are dealing. If that be true, then the Commissioner is justified in restoring to net income only that portion of the reserve for appreciation attributable to the overstatement of the cost of such records as were sold during the year. But our decision must be predicated upon findings of fact which are clearly supported by the evidence, it being obviously without our province to make any assumption or to draw inferences as to what the facts may be. Such being the case, our decision must necessarily be for the Commissioner.

*Judgment will be entered on 15 days' notice, under Rule 50.*